IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

JAMES DUREN; ANN DUREN;
J.J.'S TRUCK STOP, INC.; and
AL'S TRUCK STOP OF MALVERN, INC.                    PLAINTIFFS

v.                         No. 4:09-cv-713-DPM

E.I. DUPONT DE NEMOURS AND
COMPANY; SENTINEL TRANSPORTATION,
LLC; and JOHN DOES 1-10                              DEFENDANTS

## ORDER

**1. Parties and Claims.** The Court appreciates the parties' crisp stipulation, *Document No. 126*. All claims against Sentinel, and against the "John Doe" Defendants, are dismissed without prejudice. Plaintiffs' strict-liability claim based on an alleged ultra-hazardous activity is also dismissed without prejudice. DuPont admits liability on negligence, the sole claim left standing. The Court will read the parties' stipulation on this issue, *Document No. 126, at 2*, to the jury. The issues for trial are between DuPont on the one hand and the Durens, J.J.'s, and Al's on the other. Those issues are the extent of damages proximately caused by DuPont's negligence.

**2. Squires Materials.** The supplemental briefs and materials are helpful. The Court agrees that the road for authenticating these materials

runs through Federal Rules of Evidence 901(a) & (b)(10), 902(11), and 803(6) — the last, the business-records exception, being the most important. Testimony from a former employee with knowledge about a company's records during a particular period satisfies Rule 803(6)(D). *E.g., United States v. Childs*, 5 F.3d 1328, 1334 (9th Cir. 1993). Though no longer custodian, Squires is "another qualified witness" in the Rule's phrase because she helped create and maintain records like the ones offered for the Durens' restaurant and truck stop. But the Rules also require the Court to find these records not untrustworthy — that they are what DuPont says they are. FED. R. EVID. 803(6)(E); FED. R. EVID. 901(a). This depends on the documents' source, the circumstances of preservation and custody, the likelihood of tampering, and the nature of the evidence. *United States v. Coohey*, 11 F.3d 97, 100 (8th Cir. 1993); *United States v. Weeks*, 645 F.2d 658, 660 (8th Cir. 1981).

While Squires is a qualified witness, her baggage gives the Court pause. She apparently copied her former employers' records without permission, either before or after being let go. She litigated with the Duren companies about unemployment benefits and lost. She approached DuPont's lawyers. The motive and the opportunity time-wise for tampering are palpable. That

said, the Durens' independent verification of the key fuel data, with marginal variances of a gallon here and there, weighs in favor of finding that the documents are authentic and unaltered.

In these circumstances, the Court cannot make its trustworthiness judgment call on the affidavit alone. Squires needs to be seen and heard, outside the jury's presence, under direct and cross examination. This is not a case where authenticity is established by interlocking materials, including deposition testimony. *Compare Federal Trade Commission v. Hughes*, 710 F. Supp. 1520, 1523 (N.D. Tex. 1989). Nor does the dispute involve a lawyer's affidavit about her firm's time sheets. *Compare Kennedy v. Los Angeles Police Department*, 901 F.2d 702, 717 (9th Cir. 1990), *overruled in immaterial part by, Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993). The unique circumstances presented require a hard look.* This effort, however, does not seem worth making for several reasons.

---

*The Court also agrees with the Durens that accepting the records on the affidavit alone would create a danger of unfair prejudice substantially outweighing the records' probative value. If the records are coming in, it needs to be through testimony with cross examination.

-3-

First, the Durens have now offered to stipulate to the fuel numbers. DuPont said at the pretrial that this was the key missing data supplied by Squires. So let it be supplied by stipulation, and let us focus on more important things. (The stipulation would also eliminate any dispute on this point about Mercer's testimony: he can rely on the stipulation with everyone avoiding the records from Squires.)

Second, the jury needs either the whole story—about Squires, her pilfered duplicate records, the axe she may be grinding, the Durens' initial nonproduction, and their belated confirmation of the fuel data for key months—or none of that story. None would be better. This would be a long detour to evidence that is now undisputed. And beyond the fuel data, the limited probative value in how we got here is substantially outweighed by the trial time that would be wasted in telling the jury the whole story. FED. R. EVID. 403; *S.E.C. v. Shanahan*, 646 F.3d 536, 548 (8th Cir. 2011).

Third, the Squires records beyond the fuel data seem to be either duplicative or unimportant. DuPont has not mentioned them in its oral or written argument.

The Durens' motion *in limine* about the Squires records, *Document No. 96*, is granted conditioned on a prompt stipulation from Plaintiffs about the heretofore missing fuel data. Mercer is not to be questioned about relying on the Squires records and affidavit and interview. The Court grants permission for this gap to be filled now with the imminent stipulation.

**3. Mercer's Opinions.** The Court appreciates the complete copy of Mercer's deposition transcript (including all exhibits) provided by the Durens. Their motion *in limine* directed at Mercer's contract-related opinions, *Document No. 94*, is granted in part and denied in part. Neither Mercer nor any witness can testify that any deal would have closed, or would not have closed, but for DuPont's negligence. While this kind of ultimate-issue testimony is not *per se* excludable from an expert like Mercer, FED. R. EVID. 704(a), DuPont disclaims any intention along these lines. *Document No. 105, at 1*. Rightly so, in the Court's view. Nor may Mercer opine that any of the proposed contracts was valid or invalid as a legal matter. The Court will instruct the jury on all applicable law.

Mercer, however, is consummately experienced in valuing businesses and the valuation slice of buying and selling them. He may therefore give his

opinion about whether each of the proposed agreements made economic sense given the particular business circumstances of this restaurant and this truck stop. Mercer testified on deposition that he is familiar with buy-sell agreements and has written two books about them. He is therefore also free to testify about what was and was not covered by each proposed agreement here; he may highlight covered contingencies and what was not (but often is) contingent in any agreement; but all of this should not devolve into simply reading the contracts to the jury, which would not be helpful.

On financing, Mercer should limit his opinions to whether any agreement was or was not contingent on getting it. He may not speculate about whether any potential buyer was stout enough financially to consummate a deal. As best the Court can tell, Mercer knows too little about the possible buyers' total financial pictures to give an informed opinion about any buyer's financial ability to close. Mercer would be speculating here, which is impermissible.

If DuPont wants to cover any contract-related issues with Mercer not covered by this Order, then it must first explore the point with the Court outside the jury's presence.

So Ordered.

*/s/ DP Marshall Jr.*
D.P. Marshall Jr.
United States District Judge

5 July 2012